UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLEIGH HOEZEE,

    Plaintiff,

v.                                                                     Case No. 1:21-cv-258
                                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

        On June 26, 2019, plaintiff filed an application for DIB alleging a disability onset date of June 11, 2019.  PageID.56.  Plaintiff identified her disabling conditions as borderline personality disorder and fibromyalgia.  PageID.227.  Prior to applying for DIB, plaintiff completed the 12th grade.  PageID.228.  While plaintiff acquired sufficient quarters of coverage to qualify for DIB, she had no past relevant work.  *See* discussion, *infra*.  An administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on July 21, 2020.  PageID.56-66.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that "[t]he claimant first became insured for disability insurance benefits on July 1, 2017, and that she has acquired sufficient quarters of coverage to remain insured through September 30, 2024" and that she "has not engaged in substantial gainful activity since July 1, 2017, the date first insured." PageID.59. At the second step, the ALJ found that plaintiff had severe impairments of fibromyalgia, syncope, depression, anxiety, a borderline personality disorder, and attention deficit-hyperactivity disorder (ADHD). *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) of the Regulations. The claimant can perform no climbing of ladders, ropes, or scaffolds. She can perform other postural functions frequently. She can perform no work around hazards, including unprotected heights, and can perform no work in temperature extremes. The claimant requires work that is limited to simple, routine tasks; should not work in an environment that is stringently production or quota-based, and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow her to sustain a flexible and goal oriented pace.

PageID.62. The ALJ also found that plaintiff has no past relevant work, stating that "the claimant has never performed one job at a substantial gainful activity level for a sufficient duration to learn the job's basic requirements." PageID.56.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the medium exertional level. PageID.64-65. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as parts polisher (65,000 jobs), production helper (125,000 jobs), and dining room attendant (150,000

4

jobs). PageID.65. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2017 (the date first insured) through July 21, 2020 (the date of the decision). PageID.65-66.

### III. DISCUSSION

Plaintiff raises two issues on appeal.

**A. The Decision wrongly refuses to consider Ms. Hoezee's claim for benefits based on her mother's earnings record, necessitating a remand to consider that claim.**

Plaintiff contends that the ALJ erred by failing to consider her claim for Child Disability Benefits (CDB). The ALJ addressed this issue as follows:

> On June 26, 2019, the claimant filed an application for a Title II period of disability/disability insurance benefits alleging disability beginning June 11, 2019 (Exhibit 1D). The claim was denied initially on October 4, 2019, and upon reconsideration on February 7, 2020. Thereafter, the claimant filed a written request for hearing received on February 21, 2020 (20 CFR 404.929).
>
> The claimant is represented by Thomas A. Geelhoed, an attorney. In the brief, counsel amended the alleged disability onset date to January 1, 2017 (Exhibits 11B and 16E). Counsel also referred to an application for Title II child's disability benefits (Exhibit 16E/2). The first mention of the child's insurance application is May 1, 2020 (Exhibits 11B-12B). I am not escalating the application for child's insurance benefits to the level [sic].
>
> As indicated in this decision, the claimant is not entitled to disability insurance benefits from January 1, 2017 through June 30, 2017 because the requisite insured status requirements were not met. The pertinent period for entitlement to child's insurance benefits ended on March 19, 2017 [the attainment of 22 years of age]. For this reason the pertinent period in which to establish disability for child's disability benefits had already ended before the claimant became insured for disability insurance benefits.
>
> As counsel points out, that application was denied due to the performance of substantial gainful activity, the findings of this decision do not uphold that the claimant has performed substantial gainful activity. Moreover, in Exhibits 1A through 4A, no medical determination was made on the application for child's insurance benefits. For all of these reasons, I am not escalating the application for child's insurance benefits to the hearing level.

5

PageID.56.

In deciding not to combine the hearings, the ALJ explained that there had been no medical determination regarding plaintiff's CDB claim, which ended on March 19, 2017, about 3½ months before the relevant time period of this claim (*i.e.*, July 1, 2017).  HALLEX (Hearings, Appeals, and Litigation Law Manual) I-2-2-22 (Escalated Claims – Common Issue), provides in pertinent part that,

> For the purposes of escalation and consolidation, an ALJ will generally accept the FO's [Field Office's] request when a common issue exists. However, the ALJ will not accept an escalated claim if: []The ALJ does not agree that there is a common issue; [] For other reasons, the ALJ does not find it appropriate to join the claims; or [] The claimant objects to joining the claims.

2016 WL 1020986 at *1 (Jan. 13, 2016).  Here, the ALJ stated good reasons for not escalating and consolidating the CDB claim.  This was an appropriate exercise of her discretion under the agency's procedure.  Accordingly, this claim of error is denied.

> **B.     The Decision lacks substantial evidence to support its denial of benefits when it ignores relevant evidence and fails to explain the bases for its findings.**

Plaintiff contends that the ALJ's decision should be remanded because it ignores significant evidence of severe mental limitations and treating medical opinions.  Plaintiff contends that the ALJ's unfavorable decision is "remarkably brief," "remarkably scarce on discussing the evidence upon which it relies," and that the residual functional capacity (RFC) is not supported by substantial evidence.  Plaintiff's Brief (ECF No. 14, PageID.1227-1230).

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  20 C.F.R. § 404.1545.  The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual

functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted). The medical evidence in this case consists of about 900 pages and addressed plaintiff's treatment history from January 2016 through April 2020. PageID.309-1205. The thrust of plaintiff's claim is that the ALJ's decision does not adequately address her serious mental illness.[1]

In reviewing the evidence, the ALJ noted that plaintiff's past mental health treatment included: admission to Brinks Crisis Residential in January 2017; a partial hospitalization program in April 2019; and a hospitalization in October 2019. PageID.60. Plaintiff elaborates on this treatment, most of which occurred during the relevant time period, stating that:

> These include a crisis home in January 2017 (PageID.723), a partial hospitalization in June 2017 (PageID.1012), a crisis home in September 2017 (PageID.731), a crisis home after a suicide attempt in June 2018 (PageID.755-757), a crisis home in April 2019 (PageID.338), an inpatient hospitalization in October 2019 (PageID.633), followed by one week of intensive outpatient treatment in October 2019 (PageID.631).

Plaintiff's Brief (ECF No. 14, PageID.1228). During the relevant time period, plaintiff also engaged in episodes of self harm which included "cutting" in April and May 2017 (PageID.849, 980-981), suicidal ideation leading her therapist to encourage crisis care (PageID.988-989), reports of urges to commit self-harm at work in November 2017 (PageID.1115), and an attempt to cut herself with a dull knife in May 2018 (PageID.374). *Id*. at PageID.1229. In summary, plaintiff points out that the ALJ did not address the full extent of her treatment, hospitalization or history of self harm.

---

[1] While plaintiff objects to the ALJ's evaluation of her physical impairments (*e.g.*, blackouts in May and August 2018, diagnosis of syncope and referral to a neurologist), she does not develop this argument in any detail and acknowledges that "the syncope is likely the basis for the limitations in the RFC of not climbing ladders or working around hazards." *Id*. at PageID.1227.

7

In addition, plaintiff's employment history is problematic. Plaintiff testified that since 2014, she worked a number of short-term jobs, being employed at Family Fare, Taco Bell, Subway, J & H Oil Marathon, and a greenhouse. PageID.77-79, 82. While plaintiff worked sufficient quarters to qualify for DIB, the ALJ found that she has not engaged in any substantial gainful activity (PageID.59)[2] and that none of her jobs qualified as past relevant work (PageID.99)[3]. The ALJ addressed plaintiff's poor work history by finding that her "previous difficulties with sustaining employment have involved jobs with task requirements beyond her abilities." PageID.63. The ALJ further found that plaintiff's impairments were "sufficient[ly] stable" to perform work within the parameters of the RFC set forth in the decision. These conclusory findings with respect to plaintiff's sporadic employment and mental stability are not supported by substantial evidence. Specifically, the ALJ's decision does not address plaintiff's employment history, treatment, hospitalization, or episodes of self harm in any detail.

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's mental impairments and the mental limitations set forth in the RFC.

IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is

---

[2] "Substantial gainful activity is work activity that is both substantial and gainful: (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572.

[3] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560.

directed to re-evaluate plaintiff's mental impairments and RFC. A judgment consistent with this opinion will be issued forthwith.

Dated: September 29, 2022              /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge